UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | | |
|---|---|---|
| CONSTANCE RAINEY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:10-cv-706 |
| | ) | |
| v. | ) | Honorable Robert Holmes Bell |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) ) | |

This is a social security action brought under 42 U.S.C. § 1383(c)(3) seeking review of a final decision of the Commissioner of Social Security finding that plaintiff was not entitled to supplemental security income (SSI) benefits. On August 25, 2006, plaintiff filed her application for benefits alleging a November 1, 2005 onset of disability.[1]  Plaintiff's claim for benefits was denied on initial review.  (A.R. 85-88).  On November 14, 2008, she received an administrative hearing (A.R. 382-417), at which she was represented by counsel.  On December 19, 2008, the ALJ issued a decision finding that plaintiff was not disabled.  (A.R. 63-70).  On June 18, 2010, the Appeals Council denied review (A.R. 3-5), and the ALJ's decision became the Commissioner's final decision.

---

[1] SSI benefits are not awarded retroactively for months prior to the application for benefits. 20 C.F.R. § 416.335; *see Kelley v. Commissioner*, 566 F.3d 347, 349 n.5 (3d Cir. 2009); *see also Newsom v. Social Security Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004).  The earliest month in which SSI benefits are payable is the month after the application for SSI benefits is filed.  Thus, September 2006 is plaintiff's earliest possible entitlement to SSI benefits.

On July 22, 2010, plaintiff filed her complaint seeking judicial review of the Commissioner's decision denying her claim for SSI benefits. She raises the following issues:

1. This court should consider the post-hearing evidence which was submitted to the Appeals Council;

2. The ALJ did not have substantial evidence to support his finding that plaintiff could have performed a limited range of light work; and

3. The ALJ committed reversible error by failing to follow the vocational expert's answers to accurate hypothetical questions.

(Statement of Issues, Plf. Brief at 14, docket # 9). The initial issue raised by plaintiff is an invitation to reversible error, which the court should decline. It is well established that where, as here, the Appeals Council denied review, the only context in which the court can consider evidence that was never presented to the ALJ is a motion for remand to the Commissioner under sentence six of 42 U.S.C. § 405(g). *See Jones v. Commissioner*, 336 F.3d at 478. I recommend that plaintiff's motion for a sentence-six remand be denied because she has not carried her statutory burden. I further recommend that the Commissioner's decision be affirmed.

**Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007).

The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).

**Discussion**

The ALJ found that plaintiff had not engaged in substantial gainful activity on or after August 25, 2006. (A.R. 65). Plaintiff had the following severe impairments: "status-post [2004]

fracture of the lumbar transverse process at L-1, L-2, and L-3, an affective disorder and poly-substance abuse or dependence." (A.R. 65).  Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments.[2]  (A.R. 65). The ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited range of unskilled, light work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a range of light work.  She is able to lift and carry a maximum of 25 pounds occasionally and a maximum of ten pounds frequently.  She cannot repetitively bend or twist the lower back.  She is limited to performing unskilled work tasks.

(A.R. 67).  The ALJ found that plaintiff's testimony regarding her subjective limitations was not fully credible:

> Claimant testified at hearing to debilitating back pain as well as depression and post-traumatic stress disorder.
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects are not credible to the extent they are inconsistent with the residual functional capacity assessment.

---

[2]"Administrative law judges employ a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Social Security Act." *Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).  Under the sequential analysis, "The claimant must first show that she is not engaged in substantial gainful activity.  Next, the claimant must demonstrate that she has a 'severe impairment.'  A finding of 'disabled' will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and 'meets or equals a listed impairment.'  If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past.  Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed.  The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work." *White v. Commissioner*, 572 F.3d 272, 282 (6th Cir. 2009); *see Lindsley v. Commissioner*, 560 F.3d 601, 602-03 (6th Cir. 2009).

> In terms of the claimant's alleged low back pain, the record does substantiate the transverse fracture at three lumbar levels. However, the claimant has received remarkably little treatment for back pain since the filing date of August 2006. Objective testing has shown a lack of radicular findings.
>
> In terms of the affective or bi-polar symptomatology with a component of a personality disorder, this condition is also documented in the record. There is also documented substance abuse or dependence, specifically marijuana. However, with the exception of the 2008 arrest for drug possession, drug and or alcohol addiction do not appear particularly in the medical treatment record since August 2006. The undersigned concludes that the claimant is "not disabled" using the aforementioned five-step sequential evaluation after consideration of all her impairments, including substance abuse. The record of mental health treatment supports a conclusion, that with the use of psychotropic medications and psychotherapy, symptoms are adequately controlled and the claimant is capable of performing unskilled work tasks. The undersigned considered the various GAF values found in the record and notes that the GAF rating is the clinician's assessment but that the GAF scale does not provide objective results that can be compared to another clinician's ratings.
>
> As for the opinion evidence, the undersigned has considered the findings of the State Agency, but does not assign them significant weight in order to provide *de novo* [review] of the record in its entirety. The undersigned assigns great weight to the July 2005 [report] from back specialist M. Smuck, the physical medicine and rehabilitation specialist who has treated the claimant for lower back pain with left leg numbness (Exhibit 1F/6-7)[A.R. 223-24].
>
> In summary, the above residual functional capacity assessment is supported by the mental status treatment and findings and the lack of medic[al] treatment for the history of lumbar vertebral fractures.

(A.R. 68-69). Plaintiff had no past relevant work. (A.R. 69). She was born in January 1969. Plaintiff was 37 years old on the date she filed the application for SSI benefits and 39 years old as of the date of the ALJ's decision. Thus, at all times relevant to her claim for SSI benefits, plaintiff was classified as a younger individual. (A.R. 69). Plaintiff has at least a high-school education and is able to communicate in English. (A.R. 69). The transferability of jobs skills was not material because plaintiff had no past relevant work. (A.R. 69). The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age, and with her RFC, education, and work experience, the VE testified that there were approximately

116,000 jobs in the State of Michigan that the hypothetical person would be capable of performing. (A.R. 412-13). The ALJ found that this constituted a significant number of jobs. (A.R. 70). Using Rule 202.20 of the Medical-Vocational Guidelines as a framework, the ALJ found that plaintiff was not disabled.[3] (A.R. 70).

**1.**

Plaintiff's first argument is based on evidence that she never presented to the ALJ. (Plf. Brief at 11-12, 14-17). This is patently improper. It is clearly established law within the Sixth Circuit that the ALJ's decision is the final decision subject to review by this court in cases where the Appeals Council denies review. This court must base its review of the ALJ's decision upon the administrative record presented to the ALJ. The Sixth Circuit has repeatedly held that where, as here, the Appeals Council denies review and the ALJ's decision becomes the Commissioner's decision, the court's review is limited to the evidence presented to the ALJ. *See Jones v. Commissioner*, 336 F.3d at 478; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001); *Cline v. Commissioner*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *see also*

---

[3]The administrative record is replete with evidence regarding plaintiff's substance abuse. (*See e.g.*, A.R. 231, 235, 253, 263, 281, 285, 287-89, 321, 334, 357, 365, 368, 371, 375-76, 379). Since 1996, the Social Security Act, as amended, has precluded awards of DIB and SSI benefits based upon alcoholism and drug addiction. *See* 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J); 20 C.F.R. §§ 404.1535, 416.935; *see also Bartley v. Barnhart*, 117 F. App'x 993, 998 (6th Cir. 2004); *Hopkins v. Commissioner*, 96 F. App'x 393, 395 (6th Cir. 2004). The claimant bears the burden of demonstrating that her drug and alcohol abuse were not factors contributing to her disability. *See Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007); *Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999); *see also Zarlengo v. Barnhart*, 96 F. App'x 987, 989-90 (6th Cir. 2004). Because plaintiff was found not to be disabled, the ALJ was not required to decide the issue of whether her drug and alcohol abuse were material to a finding of disability.

*Osburn v. Apfel*, No. 98-1784, 1999 WL 503528, at * 4 (6th Cir. July 9, 1999) ("Since we may only review the evidence that was available to the ALJ to determine whether substantial evidence supported [his] decision, we cannot consider evidence newly submitted on appeal after a hearing before the ALJ."). The court is not authorized to consider plaintiff's proposed additions to the record in determining whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner correctly applied the law. *See Cline*, 96 F.3d at 148.

The last sentence of plaintiff's brief contains a passing request for alternative relief in the form of remand to the Commissioner "pursuant to either Sentence Four or Sentence Six of 42 U.S.C. Section 405(g)." (Plf. Brief at 18). Plaintiff's reply brief concludes with an identical request. (Reply Brief at 3, docket # 11). "A district court's authority to remand a case for further administrative proceedings is found in 42 U.S.C. § 405(g)." *Hollon v. Commissioner*, 447 F.3d 477, 482-83 (6th Cir. 2006). The statute permits only two types of remand: a sentence four (post-judgment) remand made in connection with a judgment affirming, modifying, or reversing the Commissioner's decision; and a sentence six (pre-judgment) remand where the court makes no substantive ruling as to the correctness of the Commissioner's decision. *Hollon*, 447 F.3d at 486 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991)); *see Allen v. Commissioner*, 561 F.3d 646, 653-54 (6th Cir. 2009). The court cannot consider evidence that was not submitted to the ALJ in the sentence four context. It only can consider such evidence in determining whether a sentence-six remand is appropriate. *See Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007); *Foster v. Halter*, 279 F.3d at 357.

Plaintiff has the burden under sentence six of 42 U.S.C. § 405(g) of demonstrating that the evidence she now presents in support of a remand is "new" and "material," and that there

is "good cause" for the failure to present this evidence in the prior proceeding. *See Hollon*, 447 F.3d at 483; *see also Ferguson v. Commissioner*, 628 F.3d 269, 276 (6th Cir. 2010). Courts "are not free to dispense with these statutory requirements." *Hollon*, 447 F.3d at 486. The records from Touchstone Innovare ("Touchstone") dated before December 19, 2008, including the October 30, 2008 psychosocial assessment provided by social worker Lori Deglopper (A.R. 29-49), are not new because they were created before the ALJ's December 19, 2008 decision. *See Ferguson*, 628 F.3d at 276; *Hollon*, 447 F.3d at 483-84. The January 2009 report of Robert LaFleur, D.O., staff psychiatrist at Touchstone (A.R. 55), Touchstone clinician notes dated after December 19, 2008 (A.R. 50-54, 56), and the records related to plaintiff's voluntary October 2009 admission to Forest View Hospital (A.R. 8-27) are new because they were generated after the ALJ's decision.

"Good cause" is not established solely because the new evidence was not generated until after the ALJ's decision. The Sixth Circuit has taken a "harder line." *Oliver v. Secretary of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986); *see also Perkins v. Apfel*, 14 F. App'x 593, 598-99 (6th Cir. 2001). The moving party must explain why the evidence was not obtained earlier and submitted to the ALJ before the ALJ's decision. *See Ferguson*, 628 F.3d at 276. Plaintiff has not addressed, much less carried, her burden of demonstrating good cause.

Finally, in order to establish materiality, plaintiff must show that the introduction of the evidence would have reasonably persuaded the Commissioner to reach a different conclusion. *See Ferguson*, 628 F.3d at 276; *Foster v. Halter*, 279 F.3d at 357. If anything, the proffered evidence reinforces the ALJ's decision finding that plaintiff was not disabled. Plaintiff's records from Touchstone reveal that she was incarcerated in the Kent County jail on drug charges from July 2008 through September 2008. (A.R. 382-417). Plaintiff is not eligible to receive social security benefits

for any months she was confined in a jail, prison, or correctional facility. 42 U.S.C. § 402(x)(1)(A).

On January 8, 2009, Psychiatrist LaFleur conducted a medication review. Plaintiff reported that she had no psychotic or manic symptoms. She did not experience hopelessness, suicidal or homicidal ideation. Dr. LaFleur noted that plaintiff was taking her medications and believed that they were working. Plaintiff reported "no excessive" use of alcohol or street drugs. Dr. LaFleur advised plaintiff to avoid "all" alcohol and street drugs." (A.R. 55).

On October 22, 2009, plaintiff voluntarily admitted herself to Forest View Hospital complaining that she was hearing voices telling her to hurt herself. (A.R. 8, 16). She admitted that she continued to use alcohol and marijuana. Her most recent cocaine use had occurred in August 2009. (A.R. 17-19). Plaintiff was able to take care of her activities of daily living independently. (A.R. 19). She stopped hearing voices and had no thoughts of self-harm after her medications were adjusted. (A.R. 9-10). The proffered evidence shows that plaintiff has an ongoing substance abuse problem, but it would not have reasonably persuaded the Commissioner to reach a different decision on the issue of whether plaintiff was disabled on or before December 19, 2008.

Plaintiff has not demonstrated that remand pursuant to sentence six of 42 U.S.C. § 405(g) is warranted. I recommend that plaintiff's motion for a sentence-six remand be denied. Plaintiff's arguments must be evaluated on the record presented to the ALJ.

**2.**

Plaintiff disagrees with the ALJ's factual finding that she retained the RFC for a limited range of unskilled, light work. She argues that the ALJ's finding is not supported by substantial evidence because her mental impairment and pain caused a higher level of restriction than

limiting her to simple, unskilled work. (Plf. Brief at 14-15). RFC is the most, not the least, a claimant can do despite her impairments. 20 C.F.R. § 416.945(a); *Griffeth v. Commissioner*, 217 F. App'x 425, 429 (6th Cir. 2007). RFC is an administrative determination made by the ALJ based upon all the evidence within the record. *Bingaman v. Commissioner*, 186 F. App'x 642, 647 (6th Cir. 2006). "[S]tatements from medical sources about what a claimant can still do are relevant evidence, but they are not determinative inasmuch as the ALJ has the ultimate responsibility of determining disability and residual functional capacity." *Deaton v. Commissioner*, 315 F. App'x 595, 598 (6th Cir. 2009). "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category if it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 416.967(b); *see Longworth v. Commissioner*, 402 F.3d 591, 596 (6th Cir. 2005).

The record shows that plaintiff began abusing crack cocaine, heroin, and marijuana in her teens. (A.R. 235, 321, 335). She participated in a robbery which resulted in the victim's death. Plaintiff and her accomplice "were trying to get money for drugs." (A.R. 321). Plaintiff was convicted of second-degree murder and sent to prison. She obtained her GED and took college-level courses while incarcerated. (A.R. 391). Plaintiff was released from prison in 2003 after serving 15 years of her 15-to-30 year sentence. (A.R. 335, 387, 389). She lived in the Flint area after her release. (A.R. 386). Plaintiff moved in with members of her family in the Grand Rapids area in 2004. (A.R. 235). In 2004, plaintiff sustained lumbar transverse process fractures at the L-1 through

L-3 levels. She wore a back brace for an extended period, but never required surgery. (A.R. 389-90). On April 13, 2005, plaintiff reported that her family physician, Dr. Willekes, was treating her back pain. (A.R. 235). Plaintiff did not submit records from Dr. Willekes in support of her claim for SSI benefits.

On April 13, 2005, Psychiatrist Nan Alt, M.D., performed a mental status evaluation. Dr. Alt noted that plaintiff's thoracic and lumbar MRI was normal other than some evidence of the old fracture. "Nothing acute. Nothing new." (A.R. 235). Plaintiff reported that she could not sleep and was sweating. She related a past history of substance dependence. She was oriented in all three spheres and had no homicidal or suicidal ideation. Dr. Alt gave plaintiff a GAF score of 40 and started her on a trial of Seroquel. (A.R. 235-36). On May 25, 2005, plaintiff reported positive results from the Seroquel. She was waking only once a night and did not experience nightmares. She stated that she was also taking the Vicodin provided by her medical doctor. Plaintiff reported no side effects from her medications. (A.R. 234). On June 29, 2005, plaintiff reported that she was doing "wonderfully well." (A.R. 233). She was oriented in all three spheres. Her concentration and memory were intact. Plaintiff's attitude was pleasant and she tracked conversation well. She reported that she was happy and her symptoms were "much reduced." (A.R. 233). Dr. Alt referred plaintiff back to Dr. Willekes, her primary care physician. (A.R. 233).

On July 12, 2005, a physical medicine and rehabilitation specialist, M. Smuck M.D., examined plaintiff and reviewed the above-referenced x-ray and MRI results. Dr. Smuck offered his opinion that plaintiff should not perform work requiring repetitive bending or twisting of her lower back. She could perform work requiring her to occasionally lift 25 pounds and frequently lift

up to 10 pounds.[4] Plaintiff did not require an assistive device and did not have limitations in her ability to stand, sit, or walk. (A.R. 223-24).

The ALJ noted that plaintiff had "received remarkably little treatment for back pain" after the August 2006 filing date and that objective testing had "shown a lack of radicular findings." (A.R. 68). On September 1, 2006, Donald C. Schanz, D.O, a board certified physician in anesthesia and pain management with the West Michigan Pain Management Institute, conducted his initial evaluation. Plaintiff reported that she had no psychiatric history and gave a social history that was "[n]egative for alcohol, tobacco, or drugs." (A.R. 238). Dr. Schanz provided the following summary of the objective evidence regarding plaintiff's back:

> Imaging studies: She has had multiple imaging studies. MRI of her thoracic spine was read as normal. MRI of her lumbosacral spine shows an old left L3 transverse process fracture; otherwise, normal MRI of the lumbosacral spine without evidence of acute fracture or spinal stenosis.
>
> Nuclear Medicine Report: Shows increased activity within the left transverse process of L1, L2, and L3, which is consistent with her history of trauma to that area, and there is no evidence of any facet arthropathy.

(A.R. 238-39). Upon examination, Dr. Schanz found that plaintiff's deep tendon reflexes were normal. She had no significant atrophy and no obvious sensory deficits. (A.R. 239). Dr. Schanz recommended that plaintiff discontinue her use of the back brace because she was becoming too dependent on it. He ordered EMG studies "to rule out any compressive neuropathies." (A.R. 239). The EMG studies returned normal results. (A.R. 240-43). Dr. Schanz treated plaintiff with epidural steroid injections. (A.R. 221).

---

[4]The ALJ found that Dr. Smuck's assessment of plaintiff's functional limitations was persuasive and incorporated it into his finding regarding plaintiff's RFC. (A.R. 69).

On October 16, 2006, plaintiff was examined at the Cherry Street Clinic by Stacia LaGarde, M.D. Plaintiff had previously obtained prescriptions from the clinic for Vicodin, ibuprofen, Prilosec OTC, and Flexeril. (A.R. 259). When plaintiff claimed that she had a "falling out" with Dr. Willekes and that she could not remember the name of another clinic she had visited, Dr. LaGarde ordered an immediate urine drug screen and required that plaintiff sign a pain medication contract before she left the clinic. (A.R. 261). Plaintiff denied using tobacco, alcohol, or drugs. (A.R. 261). Her urine drug screen was positive for marijuana metabolites. (A.R. 263). There are no medical records from the Cherry Street Clinic dated after this incident.

On November 1, 2006, William Yee, M.D., conducted a psychiatric assessment. Plaintiff stated that she was living with her sister and her sister's significant other. (A.R. 363). Dr. Yee noted that plaintiff was independent in her grooming, hygiene, and activities of daily living. (A.R. 364). She denied use of alcohol and drugs. (A.R. 363). She stated that she self-medicated with marijuana to help with her appetite and discomfort. (A.R. 363). Her drug screen was positive for marijuana use. (A.R. 368). Plaintiff was treated with Abilify for psychotic symptoms and with Celexa for her depressive symptoms. (A.R. 369). Plaintiff reported no problems with her medications. (A.R. 370). When she was discharged on November 6, 2006, she had no thoughts of injuring herself and had no auditory hallucinations, paranoia, persecutory thoughts, disorganized thoughts, racing thoughts, mood swings, manic symptoms or anxiety. Plaintiff reported that she did not feel depressed. (A.R. 370). Plaintiff was instructed to "stay away from all alcohol, nicotine, caffeine and street drugs." (A.R. 370-71).

On November 28, 2006, plaintiff appeared at the Saint Mary's Health Care Heartside Clinic. The medical professional who examined plaintiff recommended that she be weaned off her

back brace and undertake a course of physical therapy.  Plaintiff was provided with a Flexeril prescription.  (A.R. 249).  On September 5, 2007, plaintiff returned to the clinic and requested refills of her ibuprofen and Flexeril.  Plaintiff did not complain of any side effects from these medications. (A.R. 248).  Plaintiff received prescriptions for Flexeril and naproxen and was referred to physical therapy.  (A.R. 248).  On March 13, 2007, the clinic provided plaintiff with refills of the Flexeril and ibuprofen.  Plaintiff complained of occasional stomach upset, but no other side-effects.  (A.R. 247). On June 19, 2007, plaintiff received additional refills for Flexeril and naproxen.  (A.R. 356).  On September 11, 2007, doctors at the clinic initiated a trial of Celebrex and refilled plaintiff's Flexeril prescription.  (A.R. 354).

On January 8, 2007, Dr. Alt conducted a consultative evaluation.  She found that plaintiff was oriented in all three spheres.  She had no suicidal ideation.  She did not hear voices or have visions.  She was well organized and a calm and fair historian.  Plaintiff reported that she had experienced psychiatric involvement in 2003 following a motor vehicle accident.  Based on this report, Dr. Alt offered a diagnosis of a major depressive disorder, recurrent, severe, with psychotic features and cannabis dependence.  She gave plaintiff a GAF score of 25-30.  (A.R. 231-32).  On February 5, 2007, Dr. Alt noted that plaintiff was doing "fairly well" on her medications.  She had no suicidal or homicidal ideation and no active voices or visions.  (A.R. 230).  On April 9, 2007, Dr. Alt described plaintiff as psychiatrically stable and in no acute distress.  Plaintiff reported that she was sleeping well, eating well, and overall, felt quite successful on her medication.  (A.R. 229).

On July 9, 2007, Dr. Alt noted that plaintiff was taking Celexa and Abilify and was was "really doing much better."  (A.R. 344).  Plaintiff was "doing well" in October 2007.  (A.R.

346).  On January 9, 2008, plaintiff reported that she was sleeping well and had no homicidal or suicidal ideation.  (A.R. 345).

On February 4, 2008, plaintiff received an initial psychiatric evaluation at Touchstone performed by L'Tanya Haith, M.D., a consulting psychiatrist.  Plaintiff stated that she stopped using crack when she went to prison.  She continued to smoke marijuana on a regular basis.  She stated that she drank alcohol once a month, but it was not her drug of choice.  Plaintiff stated that she heard two voices inside her head telling her to kill herself but she had never acted on this.  Dr. Haith offered a diagnosis of polysubstance dependence and antisocial personality disorder.  She indicated that further investigation to rule out bipolar disorder was warranted.  She gave plaintiff a GAF score of 40.  (A.R. 321-22).  Plaintiff's subsequent psychiatric care at Touchstone was provided by Psychiatrist LaFleur.

On March 24, 2008, plaintiff appeared at the Heartside Clinic.  She reported that earlier in the month, a Dr. Gordon had discontinued her Flexeril prescription and substituted gabapentin.  Plaintiff reported that gabapentin made her "feel weird" and that she wanted to go back on Flexeril and naproxen.  Plaintiff was supplied with prescriptions for Flexeril and naproxen.  (A.R. 349-50).

On March 25, 2008, plaintiff told Dr. LaFleur that she was not using alcohol and street drugs, but substance abuse had been an issue for her in the past.  (A.R. 312).  LaFleur instructed plaintiff to avoid alcohol and street drugs.  (A.R. 312).  He described plaintiff as cooperative and her hygiene and grooming were fair.  Her mood was not depressed.  Plaintiff's anxiety was "mild."  She had some paranoia, but no overt hallucinating or mania.  She continued to do well on her Celexa and Abilify prescriptions.  Dr. LaFleur initiated a trial to Haldol to see if it

could help reduce plaintiff's paranoia. (A.R. 312). On April 16, 2008, Dr. LaFleur found that plaintiff appeared to be improving. Plaintiff felt that the Haldol had helped and paranoia was not really a problem. (A.R. 305).

On May 5, 2008, plaintiff reported to a clinician that she was still living with her niece, but was looking forward to moving in with a friend. Plaintiff reported that she was occasionally staying with the friend to see how it worked out and to determine whether they could live together. (A.R. 302).

On June 5, 2008, plaintiff was arrested for possession or sale of cocaine. (A.R. 277, 289). She was released from jail on or about October 3, 2008. (A.R 238). Dr. LaFleur examined plaintiff on October 8, 2008. Plaintiff stated that she had been released from jail a few days earlier and was doing well. She reported no symptoms. She had no depression or excessive anxiety. She had no inner restlessness or panic. She had no eating or sleeping problems and no psychotic or manic symptoms. She had no problem with her medications. She reported no excessive use of alcohol or street drugs and asserted that she was clean. Dr. LaFleur "encouraged her to remain so and avoid the crack." (A.R. 275). Dr. LaFleur advised plaintiff to continue taking her medication and to avoid "all alcohol and street drugs." (A.R. 275). Plaintiff's October 27, 2008 urine test was positive for cannabis use. (A.R. 357). On November 14, 2008, plaintiff was living with her niece. (A.R. 395, 404). Plaintiff testified that she was probably going to move because her niece and her boyfriend had a baby girl and "they want[ed] to have their own family." (A.R. 405).

The issue before the court is whether the ALJ's factual finding regarding plaintiff's RFC is supported by substantial evidence, not whether there is evidence on which the ALJ could have based a more restrictive finding. *McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir.

2006). The record summarized above provides more than substantial evidence supporting the ALJ's factual finding that plaintiff retained the RFC for a limited range of simple, unskilled, light work. Dr. Smuck stated that plaintiff was capable of performing light work with a restriction against repetitive bending or twisting of plaintiff's lower back. Drs. Schanz and Alt noted the absence of objective evidence supporting plaintiff's pain complaints. Plaintiff's treating psychiatrist, Dr. LaFleur, did not offer an opinion that plaintiff's mental impairments would prevent her from performing simple, unskilled work.

### 3.

Plaintiff disagrees with the ALJ's factual finding that her testimony regarding her subjective functional limitations was not fully credible. Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *See, e.g.*, *Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). It is the ALJ's function to determine credibility issues. *See Siterlet v. Secretary of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). The court does not make its own credibility determinations. *See Walters v. Commissioner*, 127 F.3d at 528. The court cannot substitute its own credibility determination for the ALJ's. The court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . ." *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the deferential "substantial evidence" standard. "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005). "Upon review, [the court must] accord to

the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476. "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints." *Buxton v. Halter*, 246 F.3d at 773. "Since the ALJ has the opportunity to observe the demeanor of the witness, his conclusions with respect to credibility should not be discarded lightly and should be accorded deference." *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993); *see White v. Commissioner*, 572 F.3d 272, 287 (6th Cir. 2009).

The ALJ found that plaintiff's testimony regarding the intensity, persistence, and limiting effects of her impairments was not fully credible. He noted that plaintiff had required remarkably little treatment for her back impairment and that objective testing showed a lack of radicular findings. There is more than substantial evidence supporting the ALJ's factual finding. (A.R. 68-69).

Plaintiff argues that the ALJ failed to adequately address her testimony claiming that she suffered severe drowsiness as a side effect of taking Flexeril. (Plf. Brief at 16; Reply Brief at 2). The ALJ's RFC finding obviously rejected this purported limitation. The Sixth Circuit has made clear that blanket statements that the claimant is not believable will not suffice. *See Rogers v. Commissioner*, 486 F.3d 234, 248-49 (6th Cir. 2007). Here, the ALJ provided reasons for his credibility finding, but did not separately address plaintiff's claim that Flexeril made her drowsy. (A.R. 400, 403). I find that any error in this regard was harmless. *See Rabbers v. Commissioner*, 582 F.3d 647 (6th Cir. 2009). Substantial evidence is the applicable standard of review, not perfection. *See Kornecky v. Commissioner*, 167 F. App'x 496, 507 (6th Cir. 2006). Plaintiff

requested Flexeril on numerous occasions and never complained that it made her drowsy. Plaintiff's daily marijuana abuse is one obvious explanation for her purported drowsiness. Further, the record documents that plaintiff continued to use street drugs and alcohol after her treating physicians had repeatedly instructed her to avoid both. Social security regulations make pellucid that the claimant bears the burden of demonstrating good reasons for her failure to follow prescribed treatment: "If you do not follow the prescribed treatment without good reason, we will not find you disabled." 20 C.F.R. §§ 404.1530(b), 416.930(b). The Sixth Circuit recognizes that a claimant's failure to follow prescribed treatment is evidence supporting an ALJ's factual finding that the claimant's testimony was not fully credible. *See Sias v. Secretary of Health & Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988). I find no basis for disturbing the Commissioner's decision.

### 4.

Plaintiff's attack on the adequacy of the ALJ's hypothetical question to the VE is a reformulation of plaintiff's arguments attacking the adequacy of the ALJ's factual findings regarding her RFC and credibility. A VE's testimony in response to a hypothetical question accurately reflecting a claimant's impairments provides substantial evidence supporting the Commissioner's decision. *See Varley v. Secretary of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). A hypothetical question is not required to list the claimant's medical conditions, but is only required to reflect the claimant's limitations. *Webb v. Commissioner*, 368 F.3d 629, 633 (6th Cir. 2004). The ALJ found that plaintiff's subjective complaints were not fully credible. It is well settled that a hypothetical question to a VE need not include unsubstantiated complaints. *See Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *see also Gant v. Commissioner*,

372 F. App'x 582, 585 (6th Cir. 2010) ("[I]n formulating a hypothetical question, an ALJ is only required to incorporate those limitations which he has deemed credible."). The ALJ's hypothetical properly included all limitations found to be credible, and therefore was not improper.

## Recommended Disposition

For the reasons set forth herein, I recommend that plaintiff's motion to remand this case to the Commissioner be denied. I further recommend that the Commissioner's decision be affirmed.

Dated:   September 8, 2011             /s/  Joseph G. Scoville
                                       United States Magistrate Judge

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).  General objections do not suffice. *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).